**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CHRISTIAN L. DAVIS,**

      **Plaintiff,**

                              **Civil Action 2:17-cv-995**
    **v.**                        **Judge Sarah D. Morrison**
                              **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Christian L. Davis, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income ("SSI").   This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 8).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# I. BACKGROUND

Plaintiff's mother filed an application for child's SSI benefits on his behalf in August 2011, when he was 15 years old, alleging disability since April 1, 2011 due to low motor skills, mental problems, fibromyalgia, and learning challenges. (R. at 152–57, 236.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). Following an initial hearing on January 11, 2013, ALJ James B. Griffith issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13–25.) Plaintiff turned eighteen in January 2014. ALJ Griffith's decision became the final decision of the Commissioner when the Appeals Council denied review on August 21, 2014. (R. at 1–6.)

Plaintiff thereafter commenced a civil action, *Davis v. Commissioner of Social Security*, Case Number: 2:14-cv-1909. (ECF Nos. 1 and 3.) This Court remanded Plaintiff's claim to the Appeals Council. (Id., ECF No. 15 and 16, R. at 1553–66.)

On October 23, 2015, the Appeals Council subsequently vacated and remanded ALJ Griffith's decision. (R. at 1567–69.) The case was assigned to ALJ Edmund Giorgione who held a hearing on February 3, 2016, at which Plaintiff and a Vocational Expert ("VE") testified. (R. at 1476.) Prior to ALJ Giorgione issuing a decision, he passed away. (ECF No. 11 at 2.) A subsequent hearing was held on August 2, 2016, by ALJ Timothy Gates. (R. at 1503.) On September 1, 2016, ALJ Gates issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act, either prior to or since attaining age 18. (R. at 1438–66.) On September 18, 2017, the Appeals Council denied Plaintiff's request for review and adopted

the ALJ's decision as the Commissioner's final decision. (R. at 1281–86.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. First Hearing: January 11, 2013

Plaintiff testified at the first administrative hearing on January 11, 2013, at which time he was sixteen years old. (R. at 32–56.) At the time of this hearing, Plaintiff testified that he had pain that was throbbing and radiating. (R. at 37.) He had been experienced this pain for four to five years at the time of the hearing. (*Id.*) For the past two or three years prior to the hearing, Plaintiff said he had days where he laid in bed staring at the ceiling all day. (R. at 44–45.) He described having migraine headaches that feel "like something is hitting me on all sides of my head. It's just throbbing, and it never goes away." (R. at 38.) Plaintiff testified that he cannot spend a whole day at school because every time he tries, there are "flashing lights that aggravate my migraines." (R. at 30.) When asked how he kept up with his school work, Plaintiff replied that the school was implementing a home tutoring program. (R. at 41.) At the time of the hearing, he was unsure if he was going to be held back, as he believed he was failing most of his classes. (*Id.*)

### B. Second Hearing: February 3, 2016

Following remand by this Court to the Commissioner, Plaintiff testified at another hearing on February 3, 2016, at which time he was twenty years-old and had graduated from high school. (R. at 1481–82.) Plaintiff used a cane at this hearing, testifying that his "rheumatoid doctor told me that I can use walking aides, canes or a walker. When it's bad enough, I usually use a cane and depending on the weather, it tends to make me worse. Since it's

3

raining out today, I'm at my lowest right now." (R. at 1483.) When asked what his most severe problems were, Plaintiff pointed to his migraines and arthritis, noting "they kind of go back and forth between each other, so one makes the other worse." (*Id.*) He also testified that he has vision problems including light sensitivity and trouble focusing. (R. at 1485.)

Plaintiff described that on a typical day, he can stand and walk about 25-30 minutes and sit 35 minutes. (R. at 1483.) He estimated that the most he could lift is 17 pounds based on the weight of his dog who he occasionally lifts. (*Id.*) At his home, Plaintiff can climb the steep stairs using the handrails. (R. at 1484.) He said that he could dress himself but that it took time. He said that he could shower or bathe himself but sometimes required help getting in and out of the shower. (R. at 1485.) He does not have a driver's license, noting that he was told by his neurologist that he would need to be screened first due to passing out. (R. at 1485–86.) He does not cook "too well," noting that he is forgetful. He does some dishes but "can't stand for too long and my hands cannot handle repetitive motion too well" because his joints tend to swell. (R. at 1486.) Plaintiff testified that he worked for one and one-half months in 2014 for a carwash but that he had to quit due to his medical condition. (R. at 1482.)

Lynelle Hall testified as the VE at the February 2016 hearing. (R. at 1497–1501.) ALJ Giorgione ruled out past relevant work. (R. at 1482.) He proposed a hypothetical to VE Hall regarding Plaintiff's residual functional capacity ("RFC"). (R. at 1497–98.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by ALJ Giorgione, VE Hall testified that the hypothetical individual could perform the requirements of sedentary unskilled jobs such as an addresser, with 1,100 jobs in the state and 99,000 nationally; a table worker, with 700 in the state and 58,000 nationally; and an assembler, with 500 in the state and

35,000 nationally.  (R. at 1498.)  VE Hall further testified that, if an individual missed work more than one day per month or would not on a consistent basis be able to maintain an eight-hour work day or a forty-hour work week because of the inability to maintain attention and concentration, it would be work preclusive.  (R. at 1499.)

## C.    Third Hearing:  August 2, 2016

At the supplemental administrative hearing on August 2, 2016, before ALJ Gates, Plaintiff testified that his dosage of medication had been increased since the previous hearing.  (R. at 1510.)  He testified that the following conditions had worsened:  back pain, constant migraine headaches, and difficulty getting up.  (*Id.*)  Plaintiff explained that he had been a passenger in an April 2016 motor vehicle accident and suffered a concussion, noting his head "was swollen for about a month afterwards."  (R. at 1512–13.)

At the time of this hearing, he was receiving infusions once a week to reduce pain and inflammation.  (R. at 1510, 1515.)  He described the infusions as a five-hour process that sometimes causes a spike in his blood pressure.  (*Id.*)  Plaintiff testified that he has nausea afterward and requires his mother's assistance to get up the stairs.  (R. at 1515.)  He testified that he remains in bed for four days after the infusions, that they result in more intense migraines, and that he receives very little benefit from them.   (R. at 1516.)

Plaintiff testified that his bones and muscles "really ache" when it is going to rain.  (R. at 1512.)  Plaintiff also testified that he stayed in bed "most of the day" and had difficulty with bathing, showering, and toileting.  (R. at 1514.)  Plaintiff also testified that his vision in his left eye had worsened and that he had an eye droop and blurred vision when fatigued.  (R. at 1510–11.)  He testified that he continued to have light sensitivity.  He stated that transitional lenses and

sunglasses are "helpful a little, but they don't shield as much light as I was hoping." (R. 1511–12.)

Lynne Kaufman testified as the VE at the supplemental August 2016 administrative hearing. (R. at 1517–22.) ALJ Gates posed substantially the same hypotheticals to VE Kaufman as ALJ Giorgione had posed to VE Hall at the prior hearing. VE Kaufman opined that, given all of these factors, the individual would be able to perform the requirements of the same three jobs identified by VE Hall. (R. at 1517–19.)

## III. RELEVANT RECORD EVIDENCE

### A. Medical Records Related to Childhood Disability Claim

1. <u>Nationwide Children's Hospital: Charles Spencer, M.D., Geoffrey Heyer, M.D., Sharon Wrona, CNP, and Juanita Marasca, M.D.</u>

Charles Spencer, M.D., Plaintiff's treating pediatric rheumatologist at Nationwide Children's Hospital, submitted a handwritten note, dated April 29, 2011, in which he reported that Plaintiff has juvenile fibromyalgia which causes diffuse body pain, fatigue, poor sleep, inability to concentrate, and "other problems." (R. at 490.) Dr. Spencer stated Plaintiff may need extra tutoring, half day classes, elevator access, online classes, and other "504 adjustments"[1] to help him finish the current school year. (*Id.*) Dr. Spencer concluded that he hoped to make Plaintiff "much better" by the next school year. (*Id.*)

---

[1]Section 504 of the U.S. Rehabilitation Act of 1973 is a civil rights law that prohibits discrimination against individuals with disabilities. Section 504 ensures that the child with a disability has equal access to an education. The child may receive accommodations and modifications. *See* 29 U.S.C. § 701; http://www.dol.gov/oasam/regs/statutes/sec504.htm.

Plaintiff was treated at the Outpatient Comprehensive Pain Clinic at Nationwide Children's Hospital in June through August 2011, for medical management, psychology (for relaxation, biofeedback, stress management, coping skills, psychotherapy, family therapy), physical therapy (core strengthening, flexibility, aerobic exercise), massage therapy, and attention to school return/sleep hygiene. (R. at 502–31.) During the program, Plaintiff's dosage of Lyrica was weaned, Neurontin, vitamin D supplementation and Cymbalta were started. (*Id.*) He was also started on low dose Tramadol for anticipated pain and Clonidine for sleep. (*Id.*.)

On May 24, 2011, Dr. Spencer prepared a narrative regarding Plaintiff's accommodations for school. (R. at 536.) Dr. Spencer recommended that Plaintiff have elevator access or minimized stair climbing, frequent locker trips to avoid carrying a heavy backpack, providing a second set of books for home, allowing 5 to 10-minute respites at the nurse's office for pain, allowing official medical absences based on parent report, and extended time to make up work. (*Id.*)

In August 2011, a certified nurse practitioner in the Outpatient Comprehensive Pain Clinic, Sharon Wrona, CNP, prepared a letter to Plaintiff's school requesting use of a computer for his written school work noting he experiences increased hand pain with prolonged writing. (R. at 508.) She noted that he suffers from "a complex chronic pain condition that significantly impairs his ability to attend school regularly." (*Id.*) In a separate letter from August 2011, Ms. Wrona opined that, in order to assist in Plaintiff's therapy, he should be provided an extra set of books, extra time between classes, a quiet place to rest if needed, extra time on exams and less busy work. (R. at 515.)

Plaintiff was seen again in the Outpatient Comprehensive Pain Clinic at Nationwide Children's Hospital in April 2012. (R. at 1091.) He noted that Plaintiff's functioning had "significantly improved." (*Id.*) Plaintiff reportedly tolerated his headaches on most days. (*Id.*) He had a stable mood and was attending school on average four days per week and he was encouraged to attend school daily. (*Id.*) Dr. Spencer noted in April 2012 that Plaintiff's fibromyalgia was severe and he was "doing better but had a long way to go." (R. at 1204.) Dr. Spencer noted that Plaintiff was going to be transitioning from the pain clinic to Dr. Heyer for his headaches and fibromyalgia. (*Id.*)

Pediatric neurologist, Geoffrey Heyer, M.D. noted in April 2012, that Plaintiff presented for follow up neurologic evaluation for headaches, dizziness and syncope. (R. at 1228–29.) Plaintiff reported that his pain had evolved into chronic daily headaches with rare headache-free intervals. (R. at 1228.) Dr. Heyer noted that Plaintiff's headaches were bifrontal and rarely occipital in location, throbbing in quality, and associated with nausea, dizziness, osmophobia, photophobia and phonophobia. (*Id.*) He reported to Dr. Heyer that he experienced significant sleep symptoms that included poor sleep quality, difficulty initiating sleep and frequent nightly waking. (*Id.*) Plaintiff's neurologic, power and sensory examinations were all normal, and his gait was also normal. (R. at 1228–29.) He complained of tenderness at multiple locations. (*Id.*) Dr. Heyer discussed analgesic treatment, an exercise plan and coping skills. (R. at 1229.)

In June 2012, Dr. Heyer noted that Plaintiff's pain had not changed significantly after being taken off certain medication. (R. at 1216.) Plaintiff reported to Dr. Heyer, that his "fog"

felt while on medications was gone. (*Id*.) They discussed further lifestyle changes and coping techniques for pain. (R. at 1217.)

In August 2012, Dr. Heyer noted that Plaintiff's head pain had evolved to "chronic daily headaches with rare headache-free intervals," and that the headache itself was described as "bifrontal and rarely occipital in location, throbbing in quality, and associated with nausea, dizziness, osmophobia, photophobia and phonophobia," as well as pain with head movement and "associated visual symptoms of fortifications and blurring." (R. at 1208.) An antibody study returned at 0.6 (normal range 0-0.4). (*Id.*) Dr. Heyer ordered a repeat study and discussed Plaintiff's fatigue and exercise. (R. at 1209.)

Psychiatrist, Juanita Marasca, M.D. assessed Plaintiff in December 2012 due to concerns of a depressed mood given his "complicated history of pain and medical issues." (R. at 1241–1254.) Dr. Marasca found Plaintiff exhibited a depressed mood and constricted affect. (R. at 1241.) During the evaluation, Plaintiff was calm and cooperative, with logical thought process, average eye contact, clear speech, and estimated average intelligence. (R. at 1246–47.) Dr. Marasca stated Plaintiff's functional limitations seemed "particularly severe given his reported diagnoses and physical findings," noting that "some secondary gain cannot be ruled out." (R. at 1247.) Dr. Marasca noted that Plaintiff does not fit the criteria for major depression but diagnosed him with a depressive disorder. (*Id.*) Plaintiff was referred for psychotherapy but antidepressant medication was deferred. (*Id.*)

On August 22, 2013, Dr. Spencer reported that Plaintiff has juvenile arthritis with ankylosing spondylitis, as well as profound fibromyalgia. (R. at 1273.) Dr. Spencer noted that

he has back pain, back stiffness, pains in multiple muscles and joints throughout his body that waxes and wanes, and chest pain. (*Id.*) According to Dr. Spencer, "these problems make[] it hard for him to exercise, walk distances, climb stairs, do his activities of daily living, study at times, and other activities. These problems are real and make his life very difficult there is also a lot of stress and depression." (*Id.*)

On September 4, 2013, Dr. Spencer completed a childhood disability evaluation form in which he opined that Plaintiff's impairments functionally equaled a listed impairment by causing marked limitations in two domains: attending and completing tasks, and health and physical well-being. (R. at 1267–72.)

Dr. Heyer completed a childhood disability evaluation form in October 2013 in which he opined that Plaintiff's impairments functionally equaled a listed impairment by causing marked limitations in three domains: attending and completing tasks, moving about and manipulating objects, and health and physical well-being. (R. at 1275–80.)

2. Cleveland Clinic

On referral from Dr. Spencer, Plaintiff attended the pediatric pain rehabilitation program at the Cleveland Clinic in November 2011. (R. at 766–909.) He participated in "vigorous aerobic and strengthening activities, nutrition consult, psychological supervision, relaxation[,] and coping strategies." (R. at 768.) During the course of the program, Plaintiff was able to transition from a wheelchair to a rolling walker. (R. at 814.) By the third day, Plaintiff could walk without the walker. (*Id.*) On November 9, 2011, Plaintiff participated in an activity teaching progressive muscle relaxation and isometric relaxation. (R. at 843.) Plaintiff stated he

was "so relaxed and my body doesn't feel like it's on fire anymore." (*Id.*) On November 16, 2011, Plaintiff reported he could walk a mile with physical therapy, dress independently, and bend over to ties his shoes. (R. at 890.) Plaintiff showed "significant functional gains" by the time he was discharged from the rehabilitation program on November 18, 2011. He could walk independently and complete all activities of daily living. His fine motor skills had "significant improvement," and he could draw, paint, button or zip clothes, and open containers without difficulty. (R. at 906.) Though he reported "slight fatigue" with long typing or writing assignments, his therapist concluded that no further therapy was needed for these issues. (R. at 907.)

### 3. Jack J. Kramer, Ph.D., Psychologist

On March 22, 2013, Jack J. Kramer, Ph.D., evaluated Plaintiff for disability purposes. (R. at 1257–62.) At the time of this evaluation, Plaintiff was seventeen years old. Dr. Kramer found Plaintiff was alert, attentive, "easy to talk with" and responsive to questions. (R. at 1257.) Plaintiff reported he gets along well with peers and teachers most of the time at school and does not have a history of behavioral problems or suspensions at school. (R. at 1258.) Dr. Kramer also found Plaintiff appeared to understand instructions and take time to process questions. (R. at 1259.) Dr. Kramer made a note that Plaintiff "claims more and more restrictions in his ability to get out of the house . . . [and] to complete work," and that his mother "believes that there has been an increase in problems," but this "current examiner has some doubts about whether [Plaintiff]'s impairments are as significant as he and his family portray or believe them to be." (R. at 1261.) Dr. Kramer diagnosed an adjustment disorder with depressed mood and assigned

Plaintiff a Global Assessment of Functioning (GAF) score of 55, indicative of moderate symptoms. (*Id.*) Dr. Kramer opined Plaintiff did not have any serious problems with his ability to learn, was a little immature with social skills, was limited with chores due to pain, and was not particularly active. (R. at 1260–61.)

    4.    <u>State Agency Review</u>

In November 2011 and February 2012, state agency psychologists, Vicki Warren, Ph.D. and Bruce Goldsmith, Ph.D. along with state agency pediatricians, Janice Taylor M.D. and Robert Klinger, M.D., reviewed the record, and concluded that Plaintiff had a marked limitation in health and physical well-being, no limitations in attending and completing tasks, and less than marked limitations in the other functional domains. (R. at 63–68, 77–83.)

**B.    Educational Records**

Plaintiff attended a private Christian grade school, Tree of Life, where he received accommodations including tutoring and extra time to complete his assignments. (R. at 175, 322–29.) Plaintiff transferred to public school and had an individualized education program (IEP) for special education tutoring services. (R. at 174–222, 351–69.) He completed the 9th grade at Whetstone High School, missing 71 days of school. (R. at 330.) For the 2011-2012 school year, Plaintiff was enrolled at Centennial High School. (R. at 770.) He used the school wheelchair but reported he could not use the elevator because the doors closed too quickly, so he spent the school day in the library doing online schooling while being observed by a monitor. (*Id.*) He was brought to and from school in a "lift bus" because of the wheelchair. (*Id.*) He reported difficulty writing, and said it is easier for him to "point and enter" answers per computer. (*Id.*)

In April 2012, when Plaintiff was in the 10th grade, his IEP team observed he could walk and use the stairs. (R. at 429.) The team further observed that Plaintiff's motor impairments no longer limited his access to education since he attended the rehabilitation program at the Cleveland Clinic, however his severe pain continued to affect his education. (R. at 424.)

In April 2012, Plaintiff's special education tutor, Martha Hilditch, completed a teacher questionnaire in which she stated that Plaintiff had problems with acquiring and using information because he required explanations, cueing, reminders and repetition in order to complete math assignments. (R. at 315.) She also reported that Plaintiff had problems with attending and completing tasks due to his physical demands as well as problems with moving about due to his headaches. (R. at 316, 318.) Ms. Hilditch further reported that Plaintiff had limitations in his physical well-being due to his fibromyalgia. (R. at 320.) She found no limitations in interacting and relating with others and caring for himself. (R. at 317, 319.)

## C.     Medical Opinions Related to Plaintiff's Adult Disability Claim

Dr. Spencer completed two medical source statements as to Plaintiff's functional abilities after he turned eighteen. (R. at 1695–97, 1698–1700.) In the first opinion dated July 24, 2015, Dr. Spencer noted that Plaintiff could frequently lift up to 10 pounds and rarely, or less than 1 hour per day, lift up to 20 pounds. (R. at 1695.) Dr. Spencer also opined that Plaintiff could only stand and walk for 45 minutes at a time and sit for 60 minutes at a time. (R. at 1696.) He found Plaintiff to be limited to frequent reaching bilaterally, handling, and fingering; occasional squatting and climbing steps, and he could not climb ladders. (*Id.*) Dr. Spencer further opined that Plaintiff's condition was likely to deteriorate if placed under stress, and that he would likely

13

miss 5 or more days of work per month. Dr. Spencer based his assessment on Plaintiff's diagnosis of juvenile arthritis. (R. at 1697.)

As to Plaintiff's ability to perform mental work-related activities, Dr. Spencer found that Plaintiff would be moderately impaired in his abilities to perform at production levels expected by most employers and to remember locations, workday procedures and instructions. Plaintiff was found to be only mildly or no impairment in the remaining mental work-related abilities. (R. at 1698–1700.) Dr. Spencer indicated that Plaintiff would have up to five days of unscheduled absences per month. Dr. Spencer noted the limitations were due to Plaintiff's physical conditions and pain which can be distracting and limiting. (R. at 1700.)

Dr. Spencer completed another set of medical source statements on January 14, 2016. (R. at 1883–85, 1886–88.) Dr. Spencer opined that Plaintiff could occasionally lift up to 20 pounds, and frequently lift and carry six to ten pounds. Plaintiff could frequently use his upper extremities for handling and fingering. Dr. Spencer further opined that Plaintiff could sit for four hours total in a workday and occasionally bend, crouch, squat, crawl, and climb steps and ladders. (R. at 1884.) Dr. Spencer opined that Plaintiff would have more than five absences from work in a month. (R. at 1885.)

Dr. Spencer also completed a new medical source statement regarding Plaintiff's ability to perform mental work-related activities, in which he noted only a single moderate limitation in his ability to perform at production levels expected by most employers. (R. at 1886–88.)

On January 22, 2016, Dr. Spencer prepared a narrative opinion in which he reported that Plaintiff has chronic arthritis due to Juvenile Idiopathic Arthritis. (R. at 2057.) Dr. Spencer

noted this disease affects Plaintiff's sacroiliac joints and his lumbar spine especially. (*Id.*) He noted that Plaintiff has also developed spondyloarthritis and at that time was taking medication for this condition. (*Id.*) Dr. Spencer indicated that "[a]t times, Plaintiff has improved, but he remains partially disabled." (*Id.*) He concluded that Plaintiff has trouble standing for an extended period of time due to his back and other joint pain; has difficulty walking any distance; he cannot bend over well or frequently; has joint pain that may be distracting at times doing tasks while sitting and standing; and may miss work days or arrive late at times due to his illness. (*Id.*)

## IV. THREE-STEP INQUIRY

The Commissioner uses a three-step process to determine if a child applicant is disabled and entitled to benefits: (1) if the child is engaged in substantial gainful activity, the child is not disabled; (2) if the child does not have a severe medically determinable impairment or combination of impairments, the child is not disabled; and (3) if the child's impairment(s) do not meet, medically equal, or functionally equal the listings, the child is not disabled. 20 C.F.R. § 416.924.

At the third step, an impairment functionally equals a listing if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The regulations identify six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A claimant has a "marked" limitation if the claimant's impairments seriously interfere with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A "marked" limitation is more severe than "moderate" and less severe than "extreme." 20 C.F.R. § 416.926(e)(2)(i). An impairment causes an "extreme" limitation when it interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(3)(i). In determining the effect of an impairment on the six domains, the Commissioner considers information from medical sources, parents and teachers, and consultative examiners. 20 C.F.R. § 416.926a(b)(3).

## V.    ADMINISTRATIVE DECISION

### A.    Childhood Disability Decision

On September 1, 2016, the ALJ issued his decision. (R. at 1438–66.) The ALJ found that before attaining age 18, Plaintiff had the severe impairments of fibromyalgia, ankylosing spondylitis/juvenile arthritis, and an affective disorder within the meaning of 20 C.F.R. §416.924(c). (R. at 1443.) He concluded, however, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 1444.) In the six domains used to determine a child's functional equivalence, the ALJ found that Plaintiff has "less than marked" limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for oneself. (R. at 1452–56.) The ALJ found that Plaintiff has a "marked" limitation in the domain of health and physical well-being (R. at 1457.) Because he did not find an "extreme" limitation

in one domain or a "marked" limitation in two domains, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*; *see* 20 C.F.R. § 416.926a(a).)

In reaching this conclusion, the ALJ assigned "significant" weight to the opinions of treating physicians Drs. Spencer and Heyer. (R. at 1450.) Both treating physicians came to the same conclusions as the ALJ as to the functional domains with the exception of the "attending and completing tasks" domain. (*Id.*) Both Drs. Spencer and Heyer had found Plaintiff to have a "marked" limitation in this domain, but the ALJ disagreed, citing to the opinions of Dr. Taylor, Dr. Warren, Dr. Klinger, and Dr. Goldsmith as well as other record evidence in support of his conclusion. (*Id.*)

## B. Adult Disability Decision

In his review of Plaintiff's claim under the adult standards of disability, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

gainful activity since the date his application was filed.  (R. at 1443.)  The ALJ found that

Plaintiff had not developed any new impairment or impairments since attaining age 18.  (R. at

1457.)  He further found that since attaining age 18, Plaintiff has continued to have the same

severe impairment or combination of impairments and he did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 1458.)  At step four of the

sequential process, the ALJ set forth Plaintiff's RFC as follows:

> Since attaining age 18, [Plaintiff] has had the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967(a), except he can lift
> and/or carry 20 pounds occasionally and ten pounds frequently, handle and finger
> frequently, stand 45 minutes at a time and two hours total in workday, walk 30
> minutes at a time and two hours total in a workday, sit for 60 minutes at a time
> and four hours total in a workday, and occasionally bend, crouch, crawl, and
> climb.  From a mental standpoint, he is able to occasionally interact with
> supervisors and coworkers but must avoid contact with the general public.

(R. at 1460.)

In reaching his conclusions regarding Plaintiff's RFC, the ALJ assigned "significant"

weight to the January 2016 assessment of Dr. Spencer, and "little" weight to the July 2015

assessment of Dr. Spencer.  (R. at 1462.)  The ALJ noted that Dr. Spencer has a long treating

relationship with Plaintiff and Dr. Spencer's January 2016 assessment, when he had the

experience of having treated Plaintiff for a longer period, is more consistent with the evidence

---

5.     Considering the claimant's age, education, past work experience, and residual
       functional capacity, can the claimant perform other work available in the national
       economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that documents persistent reports of musculoskeletal tenderness that would effectively limit the Plaintiff to sedentary work with occasional postural activities and frequent fingering and handling. (*Id.*) However, the ALJ noted that the treatment record and reported activities of living are not consistent with the alleged intensity of symptoms and limitations to support Dr. Spencer's opinion that Plaintiff's condition would likely deteriorate under stress, that he would be distracted from completing tasks, or that he was likely to have excessive absences from work. (*Id.*) Accordingly, he did not give Dr. Spencer's January 2016 "controlling weight." (*Id.*)

Relying on the VE's testimony, the ALJ found that, since attaining age 18, Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 1464–65.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 1465–66.)

## VI.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VII. ANALYSIS

Plaintiff puts forth two assignments of error. First, Plaintiff asserts that the ALJ erred in evaluating the opinion evidence of record related to the childhood disability determination. (ECF No. 11 at 10–17.) Plaintiff's second contention of error is that Plaintiff violated the treating source rule in his determination that Plaintiff is not disabled under the adult standard. (*Id.* at 17–19.) The Court discusses each of these contentions of error in turn.

### A. First Contention of Error: Improper Evaluation of Opinion Evidence in Record Prior to Age 18.

Plaintiff asserts that the ALJ improperly evaluated the opinion evidence of record in determining that Plaintiff was not disabled under the childhood standard of disability. (ECF No.

11 at 10–17.)  Within this contention of error, Plaintiff points to the ALJ's treatment of (1) two treating source opinions by Dr. Spencer and Dr. Heyer, and (2) two non-medical source opinions prepared by Ms. Wrona and Ms. Hilditch.  (*Id.*)

        1.    <u>Treating Physician Opinions</u>

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. ' 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. ' 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

[A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the Wilson factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to

explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Drs. Spencer and Heyer are treating physicians and that their opinions are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R. § 404.1527(d)(2). The ALJ determined, however, that as to the domain of attending and completing tasks, both treating source opinions were inconsistent with other substantial evidence in the record. Therefore, although he assigned significant weight to their opinions, he disagreed with Drs. Spencer and Heyer on this particular domain of function and therefore concluded found that Plaintiff was not disabled prior to the age of 18. (R. at 1457.)

Plaintiff contends that the ALJ's purported "good reasons" for rejecting the treating physicians' opinions on the "attending and completing tasks" domain of function are not supported by substantial evidence. (ECF No. 11 at 13–14.) He argues that the ALJ failed to consider other record evidence that supports the treating physicians' conclusions on this issue, including evidence of Plaintiff experiencing chronic headaches and other pain limiting his ability to attend school and affecting his sleep. (*Id.* at 12.)

The Commissioner asserts substantial evidence supports the ALJ's conclusion and that the ALJ's decision specifically lays out sources from the record that he found to be inconsistent with Dr. Spencer and Dr. Heyer's findings on the domain of attending and completing tasks. The Commissioner argues that therefore the ALJ appropriately weighed these treating physician opinions, providing good reasons for rejecting them. (ECF No. 17 at 8–13.)

The Undersigned agrees with the Commissioner that the ALJ provided sufficient "good reason" under the applicable regulations for assigning non-controlling weight to the treating physician's opinions. The ALJ reasonably rejected Dr. Spencer and Dr. Heyer's conclusion that Plaintiff had a "marked" limitation in the domain of "attending and completing tasks."

In reaching this conclusion, the ALJ properly noted that neither Dr. Spencer nor Dr. Heyer is a mental health specialist with the expertise to evaluate Plaintiff's capacity in this domain of function. (R. at 1450.) *See Wilson*, 378 F.3d at 544 ("[A]n ALJ must apply certain factors" including "the specialization of the treating source—in determining what weight to give the opinion.")

Next, the ALJ cited other record evidence that was inconsistent with the findings of Drs. Spencer and Heyer on this domain. The ALJ pointed to and substantial evidence supports the conclusion that the opinions were inconsistent with other evidence including Plaintiff's ability to sustain focused attention while engaging in activities he enjoys; effectively and appropriately answer questions at the administrative hearing; pick out clothes, dress, bathe, and care for personal hygiene; maintain "more than adequate" concentration, pace, and persistence; and graduate from high school with reasonable accommodations. (R. at 1450, 1453–54.) The ALJ reasonably considered and discounted Drs. Spencer and Heyer's opinions because they were

inconsistent with the other substantial evidence.  *See Tilley*, 394 F. App'x at 222, citing 20

C.F.R. § 404.1527(d)(2) ("[A] treating physician's opinion that is . . . 'inconsistent with the other

substantial evidence,' is not controlling.").)

The ALJ also reasonably relied on several state agency reviewing physicians, Drs.

Taylor, Warren, Klinger, and Goldsmith, who reached the same conclusions as Drs. Spencer and

Heyer with respect to each domain of function except for "attending and completing tasks."  (R.

at 1450.)  In this domain, these four physicians found no limitation or less than marked

limitation.  (*Id.*)  The ALJ noted that these other physicians' opinions are "consistent with and

well supported by the evidence of the record as a whole and are accepted as accurate

representations of the claimant's functional status prior to age 18."  (R. at 1450.)

The ALJ properly relied on the opinions of the state agency reviewing physicians and the

consultative examiner, because, "[s]tate agency medical and psychological consultants and other

program physicians, psychologists, and medical specialists are highly qualified physicians,

psychologists, and medical specialists who are also experts in Social Security disability

evaluation." 20 C.F.R. § 416.927(e)(2)(i); *see also Lucido v. Barnhart*, 121 F. App'x 619, 622

(6th Cir. 2005) ("the reviewing physicians . . . have the strongest claims to neutrality.").

The ALJ also properly relied on consultative examiner, Dr. Kramer's, observations that

Plaintiff could pick out his own clothes, dress without a problem, bathe himself, care for his

personal hygiene, and that his concentration, persistence and pace were more than adequate

during his examination for support of his conclusion that Plaintiff was not markedly limited in

the domain of "attending and completing tasks."  (R. at 1257-1262.)  The ALJ further noted that

consultative examiner, Mark Hammerly, Ph.D., observed Plaintiff's concentration, persistence,

and pace were adequate for all testing and interview interactions.  (R. at 1248-1199.)  Plaintiff

contends that the existence of a conflicting opinion of a non-examining physician does not, by

itself, constitute a "good reason" for rejecting a treating source opinion.  As already described,

however, the ALJ did not rely only on the conflicting opinion evidence of record.  Nor are Drs.

Kramer and Hammerly non-examining physicians.  Instead, both doctors examined Plaintiff and

found him to be less impaired than he purports to be.

The ALJ followed the proper analysis and adhered to the treating physician rule,

providing "good reasons" for assigning less than controlling weight to the treating physicians'

opinions.  Substantial evidence supports the ALJ's decision to discount the opinions of Dr.

Spencer and Dr. Heyer with respect to the domain of "attending and completing tasks."  Even if

the Court disagreed, the Sixth Circuit has held that "[i]f substantial evidence supports the

Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in

the record that would have supported an opposite conclusion."  *Longworth v. Comm'r of Soc. Sec.*,

402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted).

2.    Non-Medical Source Opinions

Plaintiff also asserts that the ALJ erred when assessing opinions from two non-medical

sources: Sharon Wrona and Martha Hilditch.  (ECF No. 11 at 14–17.)  Ms. Wrona is a certified

nurse practitioner at Nationwide Children's Hospital.  (*Id.* at 14.)  The record contains a letter

from Ms. Wrona in which she states that Plaintiff suffered from complex chronic pain condition

that affected his ability to attend school regularly.  (R. at 508.)   Ms. Hilditch, Plaintiff's former

teacher, completed a questionnaire in April 2012, opining that Plaintiff had trouble acquiring and

using information.  (R. at 315.)  She also reported that he had limitations in his physical well-

being due to the fibromyalgia but did not report limitations in interacting and relating with others or caring for himself. (R. at 317, 319.)

In addition to evaluating every medical opinion on the record, opinions from those who are not "acceptable medical sources" may be used by an ALJ "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d); *see also Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007). Thus, an ALJ must consider opinions from "other sources" and generally explain the weight they are afforded, even though "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x. 547, 550 (6th Cir. 2014) (citation omitted).

Nevertheless, an ALJ is not required to articulate a "good reason" for rejecting an opinion from an "other source" as an ALJ must do when discounting an opinion from a treating source. *York v. Comm'r of Soc. Sec.,* No. 2:13–cv–0466, 2014 WL 1213240, at *5 (S.D. Ohio Mar. 24, 2014) (citations omitted). To evaluate other source opinions, an ALJ may apply the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Arnett v. Comm'r of Soc. Sec.*, 142 F.Supp. 3d 586, 591 (S.D. Ohio, 2015); *Adams v. Colvin,* No. 3:13–cv–255, 2014 WL 5782993, at *8 (S.D.Ohio Nov. 6, 2014).

Here, the ALJ was not required to explicitly discuss his evaluation of evidence from non-acceptable medical sources. Nonetheless, the ALJ specifically set forth the weight he assigned to the evaluation of Ms. Wrona as follows:

. . . information provided by a certified nurse practitioner, such as Ms. Wrona, does not equal in probative value reports from those sources shown as being acceptable such as licensed physicians and osteopaths. I note that Ms. Wrona did not suggest specific limitations with respect to functional domains. I therefore give her assessment little weight, but I do accept her indication that the claimant required some accommodation at times, though the above-summarized physical examination findings documented that his need for accommodation was less than alleged.

R. at 1451. He also set forth the weight he assigned to Ms. Hilditch's opinion:

I give Ms. Hilditch's opinion only some weight, as the record, as summarized above and below, documents completion of high school, at least average intellectual functioning, and improvement in symptoms with rehabilitation, and I note that Ms. Hilditch saw the claimant for only 50 minutes per school day.

R. at 1451.

Contrary to Plaintiff's contention, the ALJ reasonably considered and explained the weight he assigned to the opinions of both Ms. Wrona and Ms. Hilditch in determining whether Plaintiff's impairments functionally equaled the listings. The ALJ properly discounted these other source opinions.

Substantial evidence supports the ALJ's evaluations and conclusions on the opinion evidence in the record pertaining to the child disability decision. It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

### B. Second Contention of Error: Failure to Provide Good Reasons for Rejecting Treating Physician's Opinion in Adult Disability Determination.

Dr. Spencer completed two separate medical source statements after Plaintiff turned eighteen. (ECF No. 11 at 17.) Plaintiff's second contention of error is that the ALJ erred in rejecting Dr. Spencer's opinions, in violation of the treating physician rule. *See* discussion of this rule *supra* pp. 22–24. Plaintiff contends that the ALJ erred in failing to accord controlling

weight to these opinions because they do not contradict any other medical opinions on the record and the ALJ's purported "good reasons" for rejecting them are not supported by substantial evidence. (ECF No. 11 at 18–19.) The Commissioner argues that substantial evidence supports the ALJ's conclusions with respect to the treating source opinions.

Here, the ALJ provided a detailed recitation of the evidence in the record dated after Plaintiff's eighteenth birthday. He assigned significant weight to Dr. Spencer's assessments of Plaintiff's physical limitations, but did not assign controlling weight to Dr. Spencer's opinion that Plaintiff would likely deteriorate under stress, be distracted from completing tasks, or be likely to have excessive absences. (R. at 1462.) In so concluding, the ALJ relied upon reported activities of daily living and portions of Plaintiff's treatment record that he believed were inconsistent with Dr. Spencer's opinion on this issue. (*Id.*)

The Undersigned agrees with the Commissioner that the record contains evidence inconsistent with Dr. Spencer's conclusion regarding Plaintiff's response to stress and ability to complete tasks and minimize absences. For example, medical records from 2014 and 2015 indicate that Plaintiff had graduated from high school and was feeling better, that he was not experiencing distress, that he had been the primary caregiver for his grandfather, and that he was actively seeking work. (R. at 1461, citing R. at 1708–1719, 1729–1881.) This evidence is inconsistent with Dr. Spencer's opinions that Plaintiff would deteriorate under stress, be distracted from completing tasks, or be likely to have excessive absences. *See Tilley*, 394 F. App'x at 222, citing 20 C.F.R. § 404.1527(d)(2) ("[A] treating physician's opinion that is . . . 'inconsistent with the other substantial evidence,' is not controlling.") Thus, the ALJ gave good

reasons for not affording controlling weight to Dr. spencer's opinion that Plaintiff would deteriorate under stress, be distracted from completing tasks, and would be excessively absent.

In reaching his decision that Plaintiff does not meet the adult standard of disability, the ALJ provided "good reasons" for assigning less than controlling weight to Dr. Spencer's opinions and substantial evidence supports that conclusion. As such, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

### VIII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

30

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:  January 16, 2020**                    ___/s/ *Elizabeth A. Preston Deavers*___
                                                          **Elizabeth A. Preston Deavers**
                                                          **Chief United States Magistrate Judge**